May it please the Court. My name is Traeger Makatanz. I represent Orion Marine Contractors. I would like to reserve two minutes' rebuttal, if that's possible. This is a case involving interpretation of contract terms in a construction contract. The most important contract term from Orion's perspective is Section 1505, Part 4 of the contract, which relates to mobilization and demobilization and specifically the manner in which payment is to be made. Less critical are Sections 14.4.2 and 14.4.3 of the contract, which relate to terminations for convenience. Finally, also necessary for the Court's interpretation are certain defined terms in the contract, specifically the terms contract, contract documents, and work. This case is a diversity case, so Alaska case law is controlling, and the key case for purposes of the United States District Court decision was the quality asphalt decision. So let me just, so termination for convenience allows a party to cancel its contractual obligations so that it's not a breach of contract, right? You follow me there? Yes. So what's your best authority for the proposition that termination for convenience actually changes what a party is required to do under a contract rather than simply precluding liability for a breach? It is specifically, it is the definitions within the contract itself, because the term contract in under is specifically defined as the contract at the time of entry into the contract and thereafter any modifications, change orders, or revisions to that contract. So the scope of work is an evolving sort of scope of work rather than a specific contract set at the time the contract was entered into. If you look at the definition of contract documents, it is specific that it includes the post-execution documents. In this case, since the notice of termination reduced the contract scope, then the terms of the contract scope and specifically the submittals were accordingly reduced. And according to Section 1505, it says you have three phases of payment. The first phase is after the first 4 percent. The second payment is after the second 4 percent. The third payment, which is the critical one, is after the submission of all submittals required by the contract. Since the contract is an evolving term and incorporates the modification, when the contractor submitted all of the submittals as required at that time by the contract, the contract are fulfilled. Now, the district court doesn't sort of doesn't use the word required in its findings, right? That is true. It just talks about all the submittals. So isn't it an issue of what is if you do exercise your termination for convenience, what then becomes required? I would agree with that, Your Honor. And what is required is what is required by the contract and specifically the work. And what is required by that is defined by the contract documents. And if the contract documents evolve as they do in this case, then you necessarily have a lesser requirement than all the submittals. Let me give you some examples. Are we getting a windfall here, though? Because the city asserts that they paid you amortized payments for Mob-D-Mob approximately $492,000, which is $200,000 more than your actual Mob-D-Mob costs. So would you be getting a windfall if you received the full Mob-D-Mob bid of the item of $873,000? Not at all. And the reason for that is the way this contractor spread his work for the first phase. Recall the Mob and D-Mob. I guess I'm saying it wrong then. Sorry. Potato, potato. The old criminal law in me, I guess, is going mob. Well, this doesn't involve the mob. This involves D-Mob. Sorry. Thanks. In that situation, you've got to remember that Mob and D-Mob was a specific line item in the base bid phase for $873,000. So when the contractor bid this project, his entire first phase work included the full amount of the base bid. That's how he chose to spread his amounts. And when he did that, he was still $125,000 low on the base bid amount. He's not receiving a windfall. The contractor is receiving what he specifically contracted for to perform the base bid work. How do you deal with Section 14.4.2, which was relied on by the district court, which provides that part of the job startup and phase-out costs not amortized should be paid by the city, which seems to suggest that you amortize the Mob-D-Mob amounts? Well, first, let me explain that term as I understand it. It's not clear. It's not as specific as mobilization and demobilization. Second, if you consider that the contractor is entitled to the 4%, 4%, and then all remaining submittals or all required submittals, then he has fully amortized the contract. He is entitled to his full payment under the contract. And this provision, which talks about extra work, would not apply. Well, there's no amortization at all under your theory. Well, it's amortization in the sense that you get the first 4%, the second 4%, and then the final amount is concluded. And that's also consistent with 14.4.3, which talks about you're entitled to additional costs other than as specified in the contract or as provided in the payment provisions of the contract. And this is specifically a payment provision of the contract that talks about how you are to receive payment under the terms of the contract. Now, 14.4.2 would make more sense in the situation of where you have a lump sum contract. In other words, an undifferentiated construction contract where you don't have a specific itemization for the MOAB and demobilization. In that case, let's say you are proceeding on a percentage complete basis and you get 75% complete and the contract is terminated. Then perhaps the MOAB and demobilization setup and teardown hasn't been fully performed, so they have to, at that point, determine what uncompensated costs have been paid. In this case, however, you don't have that situation. You have a specific MOAB and demobilization provision. You have specific terms which justify its payment. And here's why this is a fair result. First, it's a fair result because one of the things you see here is that the contract, the mobilization and demobilization on a construction contract, and particularly this one, is going to occur regardless of whether you have Phase 1, Phase 2, Phase 3, Phase 4. In other words, the mobilization, you move essentially everything into the project, and so you incur the MOAB costs. When the contract is complete, be it after Phase 1, Phase 2, or Phase 3, you demobilize the contract. You move all your equipment out. There's really no change in your costs, so essentially they fully perform their mobilization and demobilization work, which would entitle them to receive the full amount of this payment. Well, when you exercised the determination for convenience, you sent a letter, right? Yes, ma'am. And then I think the city responded in a December 4th letter. It did. All right, and the city listed all the submittals that Orion was required to remit in order to close out the contract. So it seems like I'm going to ask them about this too, that one way you could read that is the city's own language seems to be confirming your understanding that once it had provided all the submittals required by that letter, it was entitled to full MOAB demob. Did something change then after they changed their position after that, or does that? As a matter of fact, Your Honor, you're looking at ER 185, which talks about the specific submittals. At ER 187, they specifically acknowledge that we have fulfilled our obligations to complete all the submittals. Nevertheless, at that time thereafter, they have refused to pay us for the remaining amount of the demob and MOAB costs. In connection with that, a couple of other things I would like to bring to court's attention. Was there something that I don't know about that happened, that they changed their position, or were they always of the position that you don't get paid? That letter seems to, I mean, one way you could look at the letter is it agrees with your side. And we believe it does agree with our side. That's why we believe when they only paid us the $482,000 or so that they were incorrect, that by making the final submissions that we were entitled to the final payment. They simply refused to pay it. As a result of that, we have only been paid on our base bid contract 75% of the proceeds in the base bid contract because of the withholding of that amount, even though we fully performed the base bid contract. In connection with that, one of the key things to remember is this contract contemplated the possibility that there would be no work after the base bid contract because of the yield. As a consequence of that, there was always the possibility that the MOAB and DMOAB would be ended at the end of the first season or first phase, so there is no surprise here. The third item is if the shoe were on the other foot, and instead of having a modification that reduces the scope of the work, let's say the City of Seward chose to add a fourth and a fifth phase and increase the scope of the work. And as part of that, there were additional submittals that were required. Now, if you follow, if you agree with the City of Seward's position, then that shouldn't matter. And once the base bid or all the submittals required by the original contract were submitted, then Orion would be entitled to its demobilization costs, even though the scope has increased and there were more required submittals. That doesn't make sense. You close out the contract at the end of the contract. The last amount is for your demobilization. Similarly, in this case, if the contract is reduced in scope, such as it was, then when you complete the final submittal requirements, you're entitled to the final earned amount for your demobilization. That is what distinguishes this case from the quality case. There is a flexible definition of contract in this term and contract scope because it is dependent on the contract documents which evolve throughout the contract. In quality, in contrast, it was inflexible. The contractor in that case was required to obtain the demob and mob amount if he performed all work necessary to complete the construction of the project. Since he didn't, the condition to that, which was inflexible, was not met, and they weren't bound to pay full mob and demob costs. Second distinction with quality is that in quality, nobody ever contemplated an early termination of the project. In this case, the possibility of an early termination was contemplated as reflected by the termination for convenience language, as well as the fact that the mob and demob provision was specifically in the base bid phase contract. You're down to under a minute. Do you want to reserve? Yes, thank you. Thank you. Good morning, and may it please the court. William Earnhardt, city attorney, city of Seward. I'm going to pick up just right where that left off. And, you know, let's go to the December letter, as Judge Callahan said. Yeah, I think, yeah, that's what I'm thinking. There's the November 25th letter, right? Yep. In that letter, the Orion states its understanding of the effect of early termination. All of its obligations would end other than those associated with Orion's demobilization efforts. In its December 2nd letter, the city appears to have confirmed this understanding, stating that the demobilization is permitted at your schedule. Doesn't that exchange reflect the party's understanding that full mob would be completed, notwithstanding the early termination? No, it doesn't. And in the December 4th letter, the third paragraph says, 492 is all that's going to be paid for mobilization and demobilization. That's an excerpt of Record 183. But I think that comes into the big point that the district court recognized when the district court said, thus because a new contract did not arise when the original contract was terminated for convenience, the term contract is used in Part C of the Mob-Demob provision can only rationally be read to refer to the original contract. And I think that's very important. The last point that was brought up by Mr. Mockentons was he said, well, this contemplated early termination. If yields had been off by more than 25 percent, there was a provision that said we're going to sit down and reanalyze, renegotiate a price. Their yields were only off by 23 percent. So they had an obligation to continue on the contract. They said, we just can't. We took that risk, but we can't afford it now. So it was Orion that said, please terminate for convenience and just leave us at stasis. If they had been over 25 percent off yields and that we couldn't come to an agreed price, there would have been a termination of the contract at that point. The scope of the contract would have changed, and Orion would have gotten their mobilization demobilization bid because that was agreed price. You addressed your friend's point that whether there was the original contract done or whether additional phases were done, the mobilization of the equipment onto the site and then the demobilization when the equipment was taken off the site would have been the same. No, they're not, because Orion only did a small portion of the contract. They did an initial portion of the contract. It was about a million dollars, of which was site preparation. That's not the base bid, right? That's not the base bid. That is just one portion. And, well, why don't I just pick up with that issue because I think that's an important case. There was only one contract amount, and that's $6.1 million. It had three points in the contract where, because this is a quarry that, you know, even Orion had experience with, but no one knew exactly what the yields would be. Three points were a call for mandatory renegotiation if the yields were off over 25 percent. Anything less than that was within Orion's risk, and that's at supplemental excerpt of record 31 and 32. That's what was signed for the contract. The contractor to form all the work under the contract, $6.1 million. There's only one amount there, and that was what was signed off. And there's no issue before the court as to what Orion's intent was. That's a factual issue that was not raised with the district court where both parties agreed this was strictly a legal issue. I have made my question clear. Could you explain to me why the mobilization costs and the demobilization costs would increase because more work was done under the contract? Because the initial phase of the contract only called for a little tiny bit of rock to be pulled out. The vast majority of the other three phases of this contract were a whole lot more rock, so more equipment, more time. And I think this is a very key issue, although it does go to those factual provisions that Orion tried to raise. Orion itself said, well, the MOAB demob was bid very high because we had a contingency in case we had to get the rock from Kodiak and had to mobilize to Kodiak to get the rock. There were a lot of things that could happen throughout that contract to bring in more equipment. Your position is that each phase required a different level of mobilization and, therefore, a different level of cost. What about the demobilization? Is that necessarily true, or are the demobilization costs fixed regardless of how many? The demobilization is, again, going to happen throughout the project if they move equipment to different projects or bring in different equipment. But I think what is most important is under the contract. Once you hit termination for convenience, there is no contract. It's easy. It's frozen. It stays. I guess I'm understanding you to say if they've been above 25 percent, that you just sort of cut them a break to exercise this termination of convenience, and then that somehow changes the terms of the contract? It doesn't change the – I mean, because I was looking at this as we're just interpreting the contract. Well, let's take – And it is a termination for convenience. No one is disputing that. So that means it's not a breach. It's a termination of convenience. Now, when you terminate for convenience, what does that mean? Well, what happens? What is required? Well, it says they will be paid for all work in place at the time of termination, and that's at 1125. No demobilization had taken place at that point. And then if their demobilization costs had taken them over the 492 they were already paid, they would have been entitled to additional sums for that demobilization. They're just not entitled to the expectancy damages of the 800,000 to give themselves a 220 percent profit on that. So what evidence is there that the equipment that was there when they did the termination for convenience is equipment that they didn't need for the first stages when they terminated? I think it's absolutely irrelevant at that point. They're getting paid. There is no contract. They have to demobilize. They have to demobilize. But you're seeming to say if they had gone further, then that's what they would have had more demobilization costs, and that's not my understanding of what this record shows. This record didn't speak – did not address that at all at the district court. That wasn't at issue. We were talking strictly about the contract language, and whether they would have incurred significant costs or not we don't know. You're both arguing that we have to settle this straight up on the contract, but actually some of the facts seem to matter. For example, whether it's mobilization, demobilization costs are fixed or not. Because under their theory, look, carve out one provision, say all we have to do is submit documents, we get paid our full amount, that was the intent. You say, no, take the contract as a whole. There are amortization provisions, contract termination provisions, and so forth. All I'm saying is it's an unusual case where actually external evidence would have been useful, and maybe still may be. Well, I think the important thing is when the termination convenience was triggered under 14.4.2, 14.4.1, 15.05 Section 4 regarding mobilization, demobilization got thrown out the window. The only time we'd go back to there is if we had agreed prices. And that takes us right to the QAP case, which is directly on point. QAP had submitted a bid for $747,000, I think it was, and that's what they wanted because that was, quote, their agreed price that they were entitled to under the termination for convenience provision. However, the hearing officer and then the court upheld, no, you only get your actual cost, which is the 443. In this case, the actual costs incurred by Orion were 273. But because they had had the amortized payments, they'd already recovered an 80% profit on their actual cost. They weren't entitled to their expectancy damages of this additional $400,000. Again, this is one contract amount, and what's very probative on that is not only that they sign that, but 10.1 ER 112 talks about the contract price. The intent is a completed project, 3.4.1. There wasn't a completed project. Discrepancies on the contractor, you know, for the contract to ask those questions. I'm confused here because it seems that the termination of convenience is a mechanism to avoid a breach of contract. And so a breach of contract, then they wouldn't be, you know, then they have to pay all the damages for breaching the contract, which everyone agrees here this is a termination for convenience. And so it doesn't seem to me to be relevant that you gave them a break to do that at 23% as opposed to if it was 25% because this came to the district court as a termination for convenience. Yes. Then when I look at those letters, the November 25th letter and then your December 2nd letter, it would seem to me that the city appeared to confirm the understanding that demobilization is permitted at your convenience. Then, and if that was the understanding between the parties, I don't understand why we shouldn't interpret Part C of Section 01505 as entitling Orion to its full MOAB-DMOAB bid item if both sides agree that the full MOAB-DMOAB would be completed regardless of the early termination. And the language says required, and the district court doesn't even address that. The district court says all submittals as opposed to all submittals required. And it seems to say that the district court seems to say that means you had to have finished the contract in order to get the MOAB-DMOAB. But the language says all submittals required in the letter. Required under the contract, and speaking of the big contract. It doesn't say that, though. If we had changed the term of the contract, if we had made it just this Phase 1 because we couldn't come up with an agreed price because they were off by more than 25 percent, that would have been the end of the contract. And that's what you allowed them to do under the termination for convenience. You can't have submittals as to work that wasn't done. The submittals were for the cleanup of the site. And I think at the time, I'm not sure if we knew what their DMOAB costs were or not, but if their DMOAB had taken them to $600,000, they would have been entitled to additional costs up to that $600,000. But 1505 is out the window. They don't get the expectancy damages. You know, one thing we've got to think about is what happens if we didn't do the termination for convenience here? If they'd been off by more than 25 percent, we would have renegotiated, and we would have had to end the contract or the continuation of the contract either way. But it didn't. Orion had a duty to go on to the next three phases, even though they were taking a loss at that point. And they could hope that their yields would be off by more than 25 percent and renegotiate the final two phases or that they get really, really good yields and make up some that way. Or they could have gotten it from Kodiak. But when you allow them to do the termination for convenience, why don't we then stick to the contract? I mean, maybe that was a bad decision on the city's part. Maybe the city should have said, no, you have to go on, and then it would have been a breach, right? Yeah, it would have been a breach, and they would have been responsible. But we can't treat it like it's a breach. We have to treat it under the contract. What the city did was, yes, it is under the contract, but it's under the termination for convenience clause of the contract. The rest of the contract is gone. It doesn't exist. It's termination for convenience, which in the perfect world, November 25th, they walk away like they never met each other. Unfortunately, with construction, you're going to have to have some additional cost to clean up the site, to make it safe, to get the equipment out of there, and to balance accounts. If Orion had not been paid for the rock. If it had been a real termination of convenience that had not been graced by you, if they had actually been over the 25 percent, then they would have been entitled to all of this. I can't see how we can look at it differently. The fact that you gave them grace there, the contract terms don't change. Because I heard you to say, if they had really, if we hadn't just, if they were really entitled to the termination of convenience, and there was no, they would have been entitled to their MOB-DMOB. I think they would have had at least a better argument for it, that the contract itself had been changed in scope, because that wouldn't have been a true termination for convenience. Wasn't the contract changed in scope when you agreed to their termination for convenience? They could walk away at that point and do no more work. All they had to do was get their equipment off the site. Maybe you can explain to me why you gave them the termination for convenience. We gave them the termination for convenience, and this isn't in the record, but it's just simply, we've got a very unhappy contractor, we want to get this project done and re-bid as fast as we can. But the key thing is, if they had been... In your mind, it was kind of a little bit like a breach of contract. They had breached the contract, but we didn't, you know, rather than... You can't look at it that way. Yeah. But under the contract, 14.402 throws out 15.5 and everything else. The only time you look to the rest of the contract is as to pricing of the work completed. And all that had been completed at that point, they'd spent $279,000 on their mobilization. 14.402 deals, says when the city orders termination of the work effective on a certain date. That's not what happened here. You agreed to a termination for convenience. You didn't order it terminated at a certain date. So why does 14.402, why is that relevant? We did order it because Orion could not have ordered it. They essentially asked us to order them to stop it. Both parties made a decision of we're not going to go for expectancy or reliance damages. And if you look at the contract, at the documents, there's two very, very probative spots in there. And it comes down to November 25th. Orion sent a letter saying, okay, this is termination for convenience, no further obligations on either party. And that's what termination for convenience is about. We don't pay any money to the contractor. The contractor doesn't do any more work. Although it does have the subsection to allow for that to disappear. But Orion put in for an additional 4% based on the entire contract amount. They said the contract is 6.1 million. Orion never completed the contract. They could have been in breach, but Seward cut them a break and said, okay, we're going to order you to stop right now. Let's go to termination for convenience. And at that point, you receive what you've done for work in place at the date of the termination for convenience. And that work was not done at that point. There had been no demobilization. There had been no rock from Kodiak as that contingency in what was, you know, really an unbalanced bid in my estimation. Counsel, you're over your time, so thank you very much. Oh, sorry about that. Thank you. Time flies when you're having fun. Three quick points. First, the termination for convenience, I believe, is under addendum three, allowed irrespective of whether it's over the 25%. If you look at excerpt of record 174, it was the city of Seward who invited our termination for convenience and specifically indicated it was allowed. Second, 14.4.3, which also relates to termination for convenience, talks about the reasonable cost of settlement to the extent these costs have not been covered under the payment provisions of the contract. 1505.4 is specifically a payment provision of the contract. Therefore, they are entitled to recover that. Finally, this was a rock job. It was a rock job in phase one through all four phases. The equipment was mowed for the blasting and crushing of the rock. If you look at footnote one of the original motion for summary judgment by Orion, it pointed that out and it was not controverted by the city of Seward. Thank you. Thank you. Thank you, both, for your arguments today. The case I just heard will be submitted for decision.
judges: Thomas, Callahan, Bea